## WILL CUBINE v. THE STATE.

### No. 2545.    Decided April 29, 1903.

**1.—New Trial—Grand Jurors—Failure to Pay Poll Tax.**

It does not constitute a ground for new trial that the grand jurors finding the indictment were disqualified by reason of the fact that they had not paid their poll tax.

**2.—Same.**

Objection that the jurors trying the case were disqualified by reason of the fact that they had not paid their poll tax can not be raised, for the first time on motion for new trial.

**3.—Continuance—Practice on Appeal.**

The action of the court refusing a continuance will not be revised when no bill of exceptions was saved to said action.

**4.—Assault to Murder—Aggravated Assault—Charge—Practice on Appeal.**

On a trial for assault to murder, the failure of the court to charge on aggravated assault can not be complained of on appeal where the issue was not raised in the court below. Code Crim. Proc., art. 723.

### ON MOTION FOR REHEARING.

**5.—Motion for Rehearing—Continuance.**

Where, on motion for rehearing, it is shown that a bill of exceptions was reserved to the court's refusal to grant a continuance, such action will be considered, and if the testimony of the absent witnesses is material, probably true, and would produce a different result ·favorable to· defendant, it is held the continuance should have been granted.

Appeal from the District Court of Montague. Tried below before Hon. D. E. Barrett.

Appeal from a conviction of assault to murder; penalty, two years imprisonment in the penitentiary.

The indictment charged appellant with assault with intent to murder D. A. Price. This is a companion case to Cubine v. State, 44 Texas Crim. Rep., 596.

The opinion states the facts.

*Fooshee, March & Jameson,* for appellant.

*Howard Martin,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of assault with intent to murder.

On motion for new trial, the indictment was attacked because some of the grand jurors are alleged to have been disqualified by reason of the fact they had not paid their poll tax. Whether this be true, from the standpoint of the challenge to the array or to the individual grand jurors, so far as this case is concerned it is immaterial. In neither event would this constitute a ground for new trial. Doss v. State, 28 Texas Crim. App., 506; Hudson v. State, 40 Texas Crim. Rep., 12; Matkins v. State, 33 Texas Crim. Rep., 506; Wood v. State, 26 Texas Crim. App., 490; Reed v. State, 1 Texas Crim. App., 1.

The same objections were urged to some of the jurors who tried appellant. This question was raised for the first time on motion for new trial. This is too late. Lanes v. State, 29 Texas Crim. App., 310; Sutton v. State, 31 Texas Crim. Rep., 297; Leeper v. State, 29 Texas Crim. App., 63; Loggins v. State, 12 Texas Crim, App., 65.

As a bill of exceptions was not reserved to the action of the court refusing a continuance, that matter will not be considered. There is nothing in the record to verify appellant's contention in the motion for new trial that the jury separated while considering their verdict.

The contention of appellant as to the insufficient of the evidence presents a serious question; but it occurs to us, if the testimony for the State be true, it is sufficient. The indictment charged that the assault to murder was made upon D. A. Price. The evidence shows that Price, Tally, and Miller went to the place where appellant's father lived, and to an old house in the inclosure in the cotton field, in which there was some cotton. This occurred about 10 o'clock in the morning, and they remained until about 5 o'clock in the evening. Tally in the meantime left and went to Spanish Fort, but returned about 4 p. m. Directly after his return, appellant, Will and Ed Cain went to the old house, where Price and his crowd were. They came in a gallop, and remarked as they came, to Tally, Price and Miller, "Throw up your hands, God damn you. What are you doing?" They said they were watching old man Tally's cotton. Defendant replied it was their cotton, and anyone who said it was Tally's cotton was a God-damn lying son of a bitch, and ordered Price and his crowd to leave, which they refused to do. Defendant had his pistol on them all the time, and Will Cain requested defendant to hold them until he got back, and he would see whether they would leave. Cain rode away about a quarter of a mile south, and returned with a Winchester and struck at Price twice with it; and appellant punched him in the side with his pistol. While there, Crossthwait, the constable from Spanish Fort, came in sight, riding in the direction of the crowd, and defendant said, "There comes that damned Croosthwait," and Cain immediately threw his gun on him, and defendant rested his pistol across the saddle on his horse, pointed towards him, and forced

him to turn back. Price says: "I told defendant and Cain that none of us were armed, and that we did not come there for any trouble. We then started off, riding south towards the gate at Cubine's house, where we came into the field, defendant and Will Cain riding behind us holding their guns on us. At the gate defendant punched me on the arm with the pistol until it was black for three weeks. We had been at the cotton house about an hour after they came to us, and during all that time they had been cursing us and threatening to kill us, and had threatened to kill Crossthwait if he came closer, and had said a great many things that I can't recall. After we got out at the gate, we turned south on the road leading south from Cubine's house, and had gone about 100 or 150 yards, when Tally started off a little from me and Miller and defendant called out to him to get back in the bunch, saying, 'God damn you, I want to kill you all at one shot.' Tally came back and we were riding along, I a little in the lead, Tally and Miller next to me, and defendant and Cain behind. Defendant called to me to stop. I just kept on, and he said, 'God damn you, I will stop you,' and I heard the report of a gun, and thought I felt the wind from the bullet in my hair. I then stopped and went back toward them. I was probably ten steps ahead of defendant when the shot was fired. Cain was a little behind defendant at this time, and defendant called to him, saying, 'Come up here and let us all die together.' Cain said, 'I am here.' * * * After we had started on and had gone a little way, I looked at my hat and found a hole through the rim of the hat on the back part and a notch cut in the edge of the rim at the front, with a black stripe or burnt place made by the bullet on the rim between the hole and the notch. The bullet passed within about the bullet's width from my head." This is the testimony of Price, which is supported by that of Miller and Tally, but denied by appellant, who claimed that he fired only one shot, and this was accidental. If the testimony of Price, Miller and Tally is true, it occurs to us the evidence would justify the verdict.

It is here contended for the first time that the court erred in not charging upon aggravated assault and battery. Such a charge was demanded by the facts. The evidence in regard to the whole transaction is not given, for the reason that by the construction placed upon article 723, Code of Criminal Procedure, it was not such error as can be raised for the first time in this court. In other words, as the question was not raised in the court below by bill of exceptions or motion for new trial, it can not be revised by this court.

As the record is presented, the judgment is affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

DAVIDSON, Presiding Judge.—The judgment herein was affirmed at the Dallas term, and is now before us on motion for rehearing. In the original opinion we did not enter into a consideration of the application for continuance, for the reason that the record did not contain a

bill of exceptions to the refusal of the court to grant said continuance. On motion for rehearing it is made to appear that the bill was reserved to this action of the court. The motion for rehearing is granted, and the case will be considered from the standpoint of the motion for continuance. This is the first application. The indictment was returned on the 15th day of January, and the conviction obtained on January 28th. The absent witnesses were Parnell, Lumley· and Mrs. Lumley, alleged to have been present at the time of the alleged assault, and by them it is expected to be shown appellant fired only one shot, and this accidentally, with no purpose or intent to harm any one. The State's witnesses show that there two shots fired, at different times—one shot at one party and the other at another. The absent witnesses are alleged to have been present at the time of this difficulty and knew the facts. If the witnesses would swear as indicated, it was unquestionably very material; for, if there was only one shot fired, then the State's case fails. The other facts of the case do not render it improbable that the absent testimony is untrue; on the contrary, the statement of facts rather indicates the truthfulness of the absent testimony. At least the testimony is very material, and if believed by the jury would unquestionably produce a very different result, and one more favorable to appellant than that returned by the jury. We believe the application for continuance should have been granted, and for this reason the judgment is reversed and the cause remanded.

*Reversed and remanded.*