## Henry Jones v. The State.

### No. 54.   Decided October 27, 1909.

**1.—Theft of Cattle—Charge of Court—Principal—Accomplice.**

Where, upon trial for theft of cattle, the evidence raised the issue as to whether defendant acted as principal or accomplice, or whether he received the stolen property, the court should have given a clear-cut charge to the jury that if defendant was not a principal he should be acquitted, and the fact that he was an accomplice, or a receiver of the stolen property, either or both, would not authorize his conviction under an indictment charging him with being a principal, and qualifications by the court of this principle in defendant's special requested charges, which submitted the law correctly was reversible error. Following McDonnal v. State, 46 Texas Crim. Rep., 4, and other cases.

**2.—Same—Evidence—Conspiracy.**

Upon trial for theft of cattle, testimony of acts and statements of other parties, in the absence of appellant and in the absence of a conspiracy shown, should have been excluded.

Appeal from the District Court of Liberty.   Tried below before the Hon. L. B. Hightower.

Appeal from a conviction of theft of cattle; penalty, four years imprisonment in the penitentiary.

The opinion states the case.

*Stevens & Pickett,* for appellant.—Cited cases in the opinion.

*F. J. McCord,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—Appellant was convicted of cattle theft. The alleged owner was named Swayne. The evidence is rather voluminous in minor details. The case is one purely of circumstantial evidence. A witness named Holts testified that on the evening of the 3d of July, 1907, he was on horseback and passed where Ran Jones, son of appellant and Miles Dark, grandson of appellant were standing by their horses and one of them had a rope in his hand; that he passed by without speaking to Ran but Ran spoke to him; that about fifty or sixty yards from where the two were standing was a considerable bunch of cattle, about thirty or forty in number. In this bunch was one belonging to Swayne, a red two-year old heifer. This animal gave appearance of having been chased or run. Witness rode out to where the animal was and iden-

tified it as Swayne's; that about that time Ran Jones rode away and the witness saw nothing more of him; that witness and Miles Dark, the little grandson of appellant rode away together. So far as this witness is concerned, there is nothing shown as to what became of Ran Jones or Miles Dark, except as stated. Miles Dark lived with appellant and seems to have been raised by him up to that time and at which time he seems to have been something like 12 or 14 years of age. The evidence shows that Ran Jones lived in the town of Liberty and appellant something like two and one-half miles northeast of Liberty. This was late in the evening of the 3d of July. Ran Jones was seen by another witness later that evening, perhaps along about dusk, riding towards the town of Liberty, where he lived. The cattle mentioned were about 300 or 400 yards from the house of appellant at the time witness Holts saw them and Ran Jones and Miles Dark near them. Sam Holloman testified that he lived in the same neighborhood in which the appellant lived and beyond him from the town of Liberty; that early on the morning of the 4th of July he was going to town and passed appellant's house and in appellant's lot he saw a little heifer yearling which he ultimately describes as being about two years of age as he thought. He says the animal had its head towards him, but he knew it was a heifer, and in answer to a question stated he knew because he could see clear through it. He gives no other description of the animal than that, places no brand upon it or marks on its ears. It might be well enough to state in this connection that appellant was the owner of cattle. After passing beyond appellant's house this witness Holloman met Ran Jones going in the direction of his father's and asked him if he saw a little yearling at his father's and being answered in the affirmative stated that he was going to butcher it. An officer named Thornton, a constable, testified that on the 4th of July in company with the sheriff, Cherry, he went to appellant's home armed with a search warrant and searched his premises; that he found a number of tracks in the lot which he followed out of the lot gate into and through the field in three separate trails; that these trails were tracked to a log in a cypress break and off the log into the break some seventy-five yards to a tree in which he found concealed three sacks of meat. The following day he returned and found another sack of meat about fifty yards from where he had discovered the meat the previous day in the tree. He could not tell the size of the shoe tracks but said they were 7's, 8's, 9's or 10's, but he did not measure them, nor could he say they were three separate sizes. Nor did he pay any attention to what kind or character of shoes made the tracks, nor did he fit the feet of appellant, Ran and Ike Jones into these tracks and regretted that he did not do so. He carried these three parties with him trailing the tracks out to where he discovered the three sacks

of meat in the tree; nor would he swear that the tracks were not made by the same person. He also testifies that the same party who made the track he followed on second day could have made the three tracks he found the previous day. His statement is this: "The man that made the track out to the fourth sack so far as I know, could have made those three I found the first day. As to it being probably the same person and the same shoe, probably he could have made it." This witness disclosed expertness in tracing tracks. It is further disclosed by this witness that what he terms the "break" was a muddy, boggy place of soft ground and that in passing over it his feet would go deep into the mud and over the top of his laced boots. He also states that he did not notice whether appellant and his two sons, Ran and Ike, had any mud on their shoes or clothing. They assisted him in tracing these tracks and that he made them carry the three sacks of meat away from the tree where they were discovered. He also states that he saw no evidence of where a beef had been butchered about appellant's premises anywhere, except that in what he calls a "little hog pen" he saw some blue flies about some weeds as if they scented or smelled something. These weeds had not been disturbed or mashed down. It may be stated from the evidence that appellant has a lot in which he kept his milch cows, horses and a mule. Ike Jones, a son of appellant, milked the cows. There was a continued and very close search made for a place where the animal was butchered as well as to discover the hide, which search proved fruitless. There was no blood, offal, or other evidence of a beef having been butchered in the lot or about appellant's premises. The above in substance is a fair statement of this witness' testimony. The appellant introduced evidence to the effect that he had nothing to do with the killing of any animal and that it was not killed at his place. Several witnesses were introduced to this effect. Ike Jones, appellant's son, testified for the appellant, it having been shown that he had been acquitted on a charge of theft of the animal. His evidence was in substance that there was no animal of any sort butchered at the place and he knew nothing about the meat or how it got to the tree, and that his father and brother Ran did not participate in the killing of any animal about the premises, and in fact had nothing to do with the killing of any animal on the 4th of July. A woman by the name of Burnett who was living at the home of appellant testified in substance as did Ike Jones. All the witnesses for the State and defendant testifying on this point state that this witness was there and was ironing on the morning of the 4th of July and had a considerable fire in the yard where she heated her smoothing irons. The State shows that appellant had a very small quantity of cooked beef in his safe or on a shelf, as well as a small quantity of cooked liver. Some of the meat and liver from the testimony of appellant's witnesses had been eaten. Appellant accounted for the presence of this meat by

the fact that Ike Jones had bought the meat in the town of Liberty on the 3d of July, and appellant had bought the liver from a man named McAllister. The State denied this through testimony. Holloman was arrested by the officer for the theft of the animal and kept under arrest for a day or so and then discharged. On the morning of the 4th of July the officer, Thornton, went to the house of Holloman and found the doors barred or fastened on the inside, but finally succeeded in kicking them open and found Holloman asleep. Holloman says he was drunk. The officer aroused him and returned to appellant's house and instituted the search above described. This, perhaps, without going further into the details is a sufficient statement to review the questions.

The court gave a general charge authorizing the jury to convict if they believed appellant guilty, and also instructed the jury in regard to the law of circumstantial evidence. Appellant asked several charges submitting the law of principals. Three of these were given by the court and qualified in what appellant contends is an unauthorized manner. It is hardly necessary, we think, to reproduce each of these charges as they in substance embody the same general principle. Two of the charges, however, were refused by the court on the ground that he had previously given other charges asked by appellant covering the same question. The propositions involved may be illustrated by this requested instruction: "You are instructed that if the defendant, Henry Jones, was only an accomplice and not as a principal in the commission of the alleged crime you will find the defendant not guilty; and the law as to accomplice and principals is as follows: The dividing line between the two is the commencement of the commission of the offense; therefore if Henry Jones, the defendant, and Ran Jones, agreed to steal the alleged stolen animal together, but did not act together in the original taking of the said head of cattle, then Henry Jones, under such circumstances would not be a principal, and if you so believe, you will find the defendant not guilty and so say by your verdict. When the acts committed prior to the commission of the principal offense or subsequent thereto, and one party is not present when the offense itself is committed, such party is not guilty as a principal offender, but as an accomplice, or accessory in law. If you, therefore, believe from the evidence that the head of cattle was actually stolen by Ran Jones or Miles Dark, or by both said Ran Jones and Miles Dark, acting together, and you further believe that the defendant Henry Jones was not present when the animal was originally taken, but that he subsequently received some of the stolen meat or assisted in butchering or disposing of the same, you will in such case, find the defendant not guilty and so say by your verdict. And if you believe from the evidence that the alleged stolen animal was not originally taken by the defendant, Henry Jones, or that he was not present when the animal was originally taken, although the

defendant may have agreed to assist in the theft and to help kill the alleged stolen animal, you will find the defendant not guilty, and so say by your verdict." This charge was given with the following quali-fication by the court: "Given with the remark that the foregoing special instruction is a correct exposition of the law, but you will con-sider the same with the following: All persons are principals who are guilty of acting together in the commission of the offense and this includes not only those who are present at the commission of the of-fense, but those who though absent are doing their part in connection with and in furtherance of the common design and all persons are principals who engage in procuring aid or means of any kind to assist in the commission of an offense while others are executing the unlawful act." Exception was reserved to the court qualifying the charge as qualified and the contention is made that the qualification does not correctly state the law. It may be well to copy one of the other charges given by the court which is as follows: "You are further instructed that to constitute theft of cattle upon the range, the taking of the cattle is fully complete by the driving of such cattle with the intent to subsequently butcher the same; and if you there-fore believe from the evidence that Ran Jones, on the 3d day of July, 1907, took possession of the head of cattle alleged to have been stolen by driving the same from the range with the intent of killing the same, and that Henry Jones, the defendant, at the time of such taking of said cattle by the said Ran Jones was not present, you will find the defendant not guilty." The court gave this special charge with the following qualification: "Given with this qualification: Add after the word 'guilty' in the last line of the above special instruction these words: 'Unless you find that the defendant was connected with the original taking by Ran Jones if you find Ran Jones did drive the animal from the range.'" These two charges practically embody the thought contained in the other charges one of which was given and two refused. The one given was qualified in the same manner as those herein copied. We are of opinion that appellant's contention is correct. If Ran Jones and Miles Dark on the 3d of July took posses-sion of Swayne's cow from the range and drove her away with the intention of appropriating her to their own use and benefit and appellant was not present, then under the facts of this case he would not be guilty as a principal. He may have agreed that the animal should be stolen and subsequently butchered and that he would par-ticipate in butchering the animal and conceal the meat, still this would not make him a principal. It might constitute him an accom-plice to the taking and a receiver of the stolen property after it came into his possession or when he became connected with the animal or the fraudulent acquisition of the meat after being slaughtered, but he could not be, under our statute, a principal. This question has been so often decided we deem it unnecessary to discuss it. All the

later authorities are harmonious on this question. The old rule in Smith v. State, 21 Texas Crim. App., 107, by the majority of the court as well as in Bean v. State, 17 Texas Crim. App., 61, has been overruled by a long line of decisions and held not to be the law. It is unnecessary to go into a review of this question and what led to the later doctrine. The overruling and qualifying decisions discuss all these matters and assign the reasons. Sessions v. State, 37 Texas Crim. Rep., 58; McIver v. State, 37 S. W. Rep., 745; Criner v. State, 41 Texas Crim. Rep., 290; Bell v. State, 39 Texas Crim. Rep., 677; Yates v. State, 42 S. W. Rep., 296; Wright v. State, 40 Texas Crim. Rep., 45; Joy v. State, 41 Texas Crim. Rep., 46; Walton v. State, 41 Texas Crim. Rep., 454; Harnett v. State, 46 Texas Crim. Rep., 459; McDonald v. State, 46 Texas Crim. Rep., 4; Holmes v. State, 49 Texas Crim. Rep., 348; Davis v. State, 55 Texas Crim. Rep., 495, 117 S. W. Rep., 159. We have not undertaken to collate all the cases, but enough to show the unbroken line down to and inclusive of Davis v. State, supra, a very recently decided case. Appellant was entitled to a clear-cut charge to the jury that if he was not a principal under our statutory law, he should be acquitted, and the fact that he was an accomplice, or a receiver or both, would not authorize his conviction as a principal under this indictment.

There are several bills of exceptions reserved to the introduction of testimony of acts and statements of other parties in the absence of appellant and in the absence of a conspiracy shown. We are of opinion that upon another trial, if the facts are the same, testimony of this character should not be admitted. We deem it hardly necessary to go into a discussion of these matters as they will suggest themselves to the learned trial judge.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*